UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SIBEL PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> GAMING PARTNERS INTERNATIONAL CORPORATION and GUILFORD MILLS, INC., <br><br> Defendants. | Case No. 09-cv-87-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Guilford Mills, Inc.'s (hereinafter "Guilford") Motion to Dismiss (Doc. 47). Plaintiff Sibel Products, Inc. (hereinafter "Sibel") filed a Response (Doc. 56), to which Guilford filed a Reply (Doc. 60). In its motion, Guilford seeks dismissal of Count IV, alleging tortious interference with a contractual/business relationship,[1] of Sibel's Second Amended Complaint (Doc. 25).

## BACKGROUND

For purposes of a motion to dismiss, courts must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007). The Court, accepting all of Sibel's allegations as true and drawing all reasonable inferences in its favor, finds as follows:

---

[1] In a show of carelessness, counsel for Sibel mislabeled Count IV as "tortious interference with prospective economic advantage", as discussed *infra*.

I.      Facts

On November 3, 2005, Sibel and Gaming Partners International Corporation (hereinafter "GPIC") entered into an Exclusive Supply Agreement (hereinafter "ESA"), whereby Sibel was to supply certain cloth to GPIC for gaming table layouts.   Under the ESA, GPIC was to order certain quantities and varieties of cloth at set prices from Sibel on a monthly basis for five years.[2] An addendum to the ESA was signed by Sibel and GPIC on June 18, 2008, which, *inter alia*, amended the purchasing requirements of GPIC and extended the parties' agreement until 2013. In order to fulfill its requirements under the ESA and addendum thereto, Sibel obtained its cloth from Guilford, which Sibel then treated so that it could be used for GPIC's purposes.  While Sibel and Guilford maintained a separate exclusive supply agreement, its terms expired in December 2008, shortly after the signing of the addendum between Sibel and GPIC.

Guilford was well-aware of the contracts between Sibel and GPIC and decided to get a piece of the action.  Rather than renew its contract with Sibel, Guilford induced GPIC to break the ESA with Sibel by promising to be its exclusive and direct seller of the gaming table cloth; thereafter, since at least June 2009, Guilford has supplied GPIC with said cloth.  Put another way, Sibel unexpectedly lost its middleman status despite an eight-year business relationship with GPIC.

---

[2]Neither the ESA nor the addendum provided specific terms for time of payment of purchase orders made by GPIC.  However, over the course of their eight-year business relationship, Sibel required that GPIC prepay for each purchase order made, which it always did. Sibel contends that this conduct represented "course of performance", "course of dealing", and/or "usage of trade", as those terms are defined in the Illinois Uniform Commercial Code.

## II. Procedural Posture

GPIC removed this case on January 30, 2009, on grounds of diversity jurisdiction. However, the claim at issue, which added Guilford as a defendant to the litigation, was not raised until Sibel's most recent complaint.[3]

The Court notes that Count IV is labeled "tortious interference with prospective economic advantage", and the corresponding prayer for relief asks "[t]his Court [to] find Defendant Guilford tortuously interfered with Plaintiff's business relationship and prospective economic advantage with Defendant GPI[C]." (Doc. 25, p. 12; p. 15, ¶ A.). As one would expect, Guilford addressed this tort and relevant precedent in the instant thirteen-page motion. However, in responding to said motion, Sibel informed Guilford, GPIC, and the Court that Count IV should have read "tortious interference with a contractual/business relationship". Subsequently, Guilford was forced to address Sibel's "new claim" in its reply brief, which could not exceed five pages without leave of court.

This is unacceptable, especially in light of the fact that Sibel is represented by counsel and its most recent complaint represents the third submitted to the Court. Guilford, GPIC, and the Court should not have to waste time reviewing inapplicable and unintended claims due to the carelessness of counsel. The Court admonishes Sibel and its counsel that any more "mistakes" will not be tolerated.

---

[3]The filing of Sibel's (First) Amended Complaint (Doc. 17) was proper, as it was made prior to the service of a responsive pleading. *See* Fed. R. Civ. P. 15(a)(1)(A). Sibel's Second Amended Complaint (Doc. 25) was also proper, as the Court, in a previous Order (Doc. 24), granted Sibel the requisite leave to file. *See* Fed. R. Civ. P. 15(a)(2).

## ANALYSIS

### I.  Motions to Dismiss Generally

The federal system of notice pleading requires only that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It is not necessary for the complaint to allege detailed facts. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). Under federal notice pleading standards, a plaintiff need not plead facts to support each element of a claim or theory as long as he puts the defendant fairly on notice of what his claim is. *See Shah v. Inter-Continental Hotel Chicago Operating Corp.,* 314 F.3d 278, 282 (7th Cir. 2002); *Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994) (a plaintiff is not required to "plead facts that, if true, establish each element of a 'cause of action' . . . .").

Nevertheless, in order to provide fair notice of the grounds for his claim, the plaintiff must allege sufficient facts "to raise a right to relief above the speculative level." *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must offer "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id*. The plaintiff's pleading obligation is to avoid factual allegations "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under [Federal] Rule [of Civil Procedure] 8." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). However, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8.

**II. Count IV - Tortious Interference with a Contractual/Business Relationship**

Illinois has long recognized tortious interference with a contractual/business relationship as a cause of action. *See, e.g., Swager v. Couri*, 395 N.E.2d 921, 926 (Ill. 1979). The tort carries the following elements:

> (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989) (quotations and citations omitted). With respect to the first element, in establishing the existence of a contract, "a pleader must allege facts sufficient to indicate offer, acceptance, and consideration." *Kraft Chem. Co. v. Ill. Bell Tel. Co.*, 608 N.E.2d 243, 247 (Ill. App. Ct. 1992). Meanwhile, an example of a contract on which an interference tort may not be premised includes one "opposed to public policy, so that the law will not aid in upholding it." *First Am. Kickapoo Operations, L.L.C. v. Multimedia Games, Inc.*, 412 F.3d 1166, 1177 (10th Cir. 2005) (citing W. Page Keeton *et al.*, *Prosser and Keeton on Torts* § 129 at 994 (5th ed. 1984)) (quotations and footnote omitted). Turning to the third element, specifically when privilege does not exist, a plaintiff must only show that "a defendant intentionally induced another to breach a contract with him, or intentionally interfered with his future business prospects; and whether a defendant was justified to interfere with the existing or future business relationships of another becomes an affirmative defense which he must plead and subsequently prove." *Roy v. Coyne*, 630 N.E.2d 1024, 1031 (Ill. App. Ct. 1994) (footnote omitted).

Here, Guilford argues in its motion that Sibel failed to meet either the first or third element of a tortious interference with a contractual/business relationship claim. First, Guilford

argues that Sibel did not and cannot allege a legally enforceable contract because it could not uphold its end of the ESA with GPIC. However, Guilford's argument misses the mark. First and perhaps most obviously, the agreement and business relationship between Sibel and GPIC required GPIC to first perform,[4] rendering Guilford's contention nothing more than mere speculation. The Court will not assume that Sibel could not somehow fill GPIC's order. If the Court were to assume that much, it could also infer that Guilford would have changed its mind about supplying its middleman once payment could be made. More importantly, whether the ESA represents a legally enforceable contract for purposes of the interference tort is not premised on performance or certainty of performance, especially in light of its bilateral nature. All that Sibel needed to plead was offer, acceptance, and consideration, which it did and Sibel does not dispute. Further, the Court notes that the ESA is in comport with public policy, which is also undisputed by Guilford.

     Next, Guilford contends that Sibel failed to properly allege intentional and unjustified interference with the ESA. However, this is simply not true. Guilford has not alleged that it was privileged in interfering with the ESA; as such, pursuant to *Roy*, Sibel need only show that Guilford intentionally induced GPIC to breach the contract. Sibel's most recent complaint informs the Court that Guilford was aware of the ESA and addendum thereto, eventually inducing GPIC to breach said agreements. (*See* Doc. 25, p. 14, ¶ 10). Sibel goes on to plead several facts, discussed *supra*, surrounding Guilford and GPIC's relevant business maneuver thereafter, including direct dealing. The complaint pleads facts which are more than speculative, and it appears to have put Guilford on notice of the claim against it. In short, the Court is satisfied that

---

[4]This is alleged by Sibel in its breach of contract claim.

Sibel has sufficiently alleged the third element of a tortious interference with a contractual/business relationship claim and the tort as a whole.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Guilford's Motion to Dismiss (Doc. 47). Further, the Court **GRANTS Sibel leave to file a third amended complaint no later than January 22, 2010. Such leave is solely for the purpose of correcting the title and prayer for relief of Count IV.**

**IT IS SO ORDERED.**
**DATED: January 4, 2010**

<u>s/ J. Phil Gilbert</u>
**J. PHIL GILBERT**
**DISTRICT JUDGE**
